UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Nº 11-CV-2390 (JFB)(WDW)
_____

GILBERT ROMAN,

Plaintiff,

VERSUS

CENTRAL INTELLIGENCE AGENCY,

Defendant.
_____

**MEMORANDUM AND ORDER**
December 11, 2012
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Gilbert Roman ("plaintiff" or "Roman") brought this action against the Central Intelligence Agency ("defendant" or "CIA") seeking that it produce records responsive to his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Defendant argues that it has performed reasonable searches and produced all relevant documents to plaintiff other than documents subject to FOIA exemptions. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. As set forth below, the Court finds that the CIA performed a reasonable and adequate search in full compliance with FOIA. Moreover, where defendant withheld documents pursuant to a FOIA exemption, defendant did so properly. Accordingly, the Court grants summary judgment to defendant, and dismisses the complaint.

I. BACKGROUND

A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits, and defendant's Local Rule 56.1 Statement of Facts.[1] In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff filed a FOIA request with the CIA on February 28, 2011, requesting "[a]ny and all e-mail communication concerning Gilbert Roman/me and/or his FOIA/PA request to your agency from 1986-2011" and "[a]ny and all memorandums concerning Gilbert Roman/me and/or his FOIA/PA request[s] to your agency from

---

[1] Plaintiff has not submitted a Rule 56.1 Statement of Facts.

1986-2011." (Def.'s 56.1 ¶ 1.)

The CIA responded to plaintiff's request on August 26, 2011, informing him that that the CIA had located nineteen documents responsive to his request. (*Id.* ¶ 9.) Defendant released one of the documents to Roman in full, but withheld eighteen documents in their entirety due to Exemption 3 and Exemption 5 of FOIA, 5 U.S.C. § 552(b)(3) and § 552(b)(5). (*Id.*) After Roman filed this lawsuit, the CIA re-reviewed his FOIA request and informed Roman, by letter dated November 9, 2011, that it had located four additional responsive documents, but that they were being withheld because that the documents were also subject to FOIA Exemptions 3 and 5. (*Id.* ¶ 11.)

### B. Procedural History

Plaintiff filed this action on May 17, 2011. On March 8, 2012, defendant moved for summary judgment. Plaintiff filed his opposition on March 21, 2012, and defendant replied on April 26, 2012.

The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party

2

may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotation marks and citation omitted).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (alterations in original). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, to overcome a motion for summary judgment, the non-moving *pro se* party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted); *see also Morris v. Ales Grp. USA, Inc.*, No. 04 Civ. 8239, 2007 WL 1893729, at *3 (S.D.N.Y. June 29, 2007) ("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'" (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981))).

III. DISCUSSION

A. Applicable Law

The central purpose of FOIA is to "ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). Under the statute, "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994); *accord Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir. 1995). FOIA confers jurisdiction on district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . . ." 5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). However, "jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records. Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Tax Analysts*, 492 U.S. at 142 (internal quotation marks and citation omitted).

Accordingly, "[i]t is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A.*

3

*Michael's Piano*, 18 F.3d at 143 (citation omitted). A district court "may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotation marks and citation omitted). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden . . . [and] are accorded a presumption of good faith." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotation marks and citations omitted); *see also Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Malizia v. U.S. Dep't of Justice*, 519 F. Supp. 338, 342 (S.D.N.Y. 1981).

An agency affidavit is sufficient where it "identif[ies] the searched files and describe[s] at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *Rabin v. U.S. Dep't of State*, 980 F. Supp. 116, 120 (E.D.N.Y. 1997) (internal quotation marks and citations omitted) (holding that the affidavit in question was insufficient because it did "not describe the general structure of the Agency's record keeping system, or the methods by which the Agency generally conducts its searches . . . [and] which of the Agency's files were searched in response" to the request); *see also El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 298 (D. Conn. 2008) ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary . . . to allow the district court to determine if the search was adequate in order to grant summary judgment." (internal quotation marks and citations omitted)).

An agency responding to a FOIA request need not "take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (internal quotation marks and citation omitted). A search is "reasonable and adequate even if 'it fails to produce all relevant material.'" *Id.* (quoting *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986)).

When agency submissions are adequate on their face, a district court has the discretion to "'forgo discovery and award summary judgment on the basis of affidavits.'" *Carney*, 19 F.3d at 812 (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). "In order to avoid summary judgment and proceed to discovery once the defending agency has satisfied its burden, 'the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations.'" *Labella v. FBI*, No. 07-CV-2330, 2008 WL 2001901, at *6 (E.D.N.Y. May 8, 2008) (quoting *Carney*, 19 F.3d at 812), *aff'd* 332 F. App'x 715 (2d Cir. 2009); *see also Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions." (citations omitted)). Because plaintiff is representing himself *pro se*, the Court has construed his papers liberally.

4

B. Application

Defendant submitted declarations from Susan Viscuso, the Information and Privacy Coordinator at the CIA at the time of her declaration, and Michele L. Meeks, the new Information and Privacy Coordinator. The Viscuso Declaration provides a detailed outline of the CIA's FOIA policies and procedures, and guides the Court through what happens to a FOIA request once it is received by the agency. (Declaration of Susan Viscuso ("Viscuso Decl.") ¶¶ 12-17, Feb. 8, 2012.) Viscuso explains that CIA records relating to the receipt and processing of FOIA requests are maintained in a Privacy Act system of records called "Information Release Records." (*Id.* ¶ 19.) Records maintained in the system include Privacy Act and FOIA requests, and processing files. (*Id.*) These records are stored in paper or electronic form. (*Id.*)

Plaintiff requested all email communication and memorandum "concerning Gilbert Roman/me and/or his FOIA/PA request to your agency from 1986-2011." (Def.'s 56.1 ¶ 1.) In response, the agency searched the CIA Information Release Records using plaintiff's name, "Gilbert Roman" as the search term. (Viscusco Decl. ¶ 20.) The search yielded ten case numbers which were not the subject of pending litigation.[2] (*Id.*) The CIA then searched these files for memoranda and email concerning plaintiff's FOIA/PA requests. (*Id.*) Because several of plaintiff's FOIA requests had been the subject of litigation, the agency also searched its index of closed litigation files for "Gilbert Roman." (*Id.* ¶ 21.) In addition, the CIA searched its email communications for "Gilbert Roman" and the case numbers assigned to his prior FOIA/PA requests. (*Id.* ¶ 22.) After plaintiff initiated this litigation, the CIA conducted another search of its records and located additional documents. (*Id.* ¶ 11.)

The Meeks Declaration, which defendant submitted in connection with its reply brief, provides substantially similar information to the Viscuso Declaration. Meeks states that the CIA ran additional searches for plaintiff's name within the records of the Directorate of Support and the National Clandestine Service, but that no records were located. (Declaration of Michele L. Meeks ("Meeks Decl.") ¶¶ 16-17, Apr. 24, 2012.)

The CIA's declarations are "reasonably detailed affidavit[s]" that "set forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched . . . ." *El Badrawi*, 583 F. Supp. 2d at 298 (quotations omitted). The CIA has set forth sufficient information in its affidavits regarding its efforts to locate documents responsive to plaintiff's request for this Court to determine that the search was adequate. The agency even performed additional searches, in an abundance of caution, to adequately respond to plaintiff's request.

The CIA located twenty-three responsive documents. (Viscusco Decl. ¶ 20.) One document was released in its entirety. (*Id.* ¶ 20 n.8.) The CIA determined that the other twenty-two documents were subject to FOIA Exemption 3 and Exemption 5, and therefore must be withheld in their entirety. (*Id.* ¶¶ 24-46.) The Viscuso Declaration methodically reviews each document,

---

[2] Because plaintiff has filed numerous lawsuits concerning FOIA requests, including some against the CIA, the CIA deemed any documents that involved pending litigation as outside the scope of plaintiff's request, and therefore did not disclose them. (*See* Viscuso Decl. ¶ 20 & n.7.)

providing the date of the email or memorandum, the division or the title of the individuals involved in the communication, broad information on the content of the communication, and why the agency believes the document is subject to an exemption. (*Id.* ¶¶ 32-45.) The description for documents 9 and 10 provide an illustrative example:

> Six page string email (containing repetitive messages) dated 11/6/09-12/1/09 between/among CIA attorneys, directorate IROs, and PIPD concerning ongoing litigation, weighing different approaches to the handling of certain information, and discussing various opinions and recommendations, and providing legal guidance. The information is withheld in full pursuant to FOIA exemptions (b)(3) and (b)(5). [9] The entire string constitutes attorney work product and internal deliberations of the Agency as well as includes substantial privileged attorney-client communication and is withheld in its entirety based on exemption (b)(5). The names of CIA employees-sender, recipients and internal references, are withheld pursuant to exemption (b)(3). Document 10 is four page string email which is also contained entirely within document 9. The information falls within the description above and is withheld in full pursuant to FOIA exemptions (b)(3) and (b)(5).

(*Id.* ¶ 35.)

### 1. Exemption 3

FOIA Exemption 3 protects information "specifically exempted from disclosure by statute" if that statute meets certain requirements. 5 U.S.C. § 552(b)(3). Specifically, the statute must "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." *Id.* § 552(b)(3)(A). The Supreme Court has set forth a two-part analysis for courts reviewing an agency's invocation of Exemption 3. *CIA v. Sims*, 471 U.S. 159, 167 (1985). First, the court must determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3. *See id*. If so, the court must then determine whether the withheld information meets the requirements of that statute. *See id.*; *see also A. Michael's Piano*, 18 F.3d at 143; *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990); *ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 554 (S.D.N.Y. 2005).

Here, the applicable statute is section 6 of the CIA Act of 1949, which requires the CIA to protect from disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g. This statute is properly within the bounds of Exemption 3 because it leaves no discretion as to whether the information should be withheld from the public. *See Larson v. Dep't of State*, 565 F.3d 857, 865 n.2 (D.C. Cir. 2009); *Malizia v. U.S. Dep't of Justice*, 519 F. Supp. 338, 346 (S.D.N.Y. 1981) ("Section 403g qualifies under Exemption 3 as a statute that 'specifically exempt(s)' information from disclosure." (citations omitted)).

### 2. Exemption 5

The CIA also withheld information pursuant to Exemption 5. Exemption 5 protects "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption thus protects documents ordinarily privileged in the civil discovery context. *See FTC v. Grolier, Inc.*, 462 U.S. 19, 26-28 (1983). Accordingly, "[c]ourts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine, and executive, deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); s*ee also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("[I]t is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context."). The CIA claims that the documents in this case are protected from disclosure by either the deliberative process privilege, the attorney work-product privilege, or the attorney-client privilege.

The deliberative process privilege protects from disclosure "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Tigue v. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The rationale behind the privilege is "'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.'" *Id.* (quoting *Klamath*, 532 U.S. at 8-9).

To qualify for this protection, the document at issue must be an inter-agency or intra-agency document that is "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotation marks and citation omitted); *accord Tigue*, 312 F.3d at 76. The documents must not be "'merely peripheral to actual policy formation'" and "'must bear on the formulation or exercise of policy-oriented judgment.'" *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'ship*, 166 F.3d at 482). Also, "[p]urely factual material not reflecting the agency's deliberative process is not protected." *Local 3, Int'l Brotherhood of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). Finally, if "the agency has chosen expressly to adopt or incorporate by reference a memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," that memorandum would not be protected by Exemption 5. *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotations, alteration, and citation omitted).

The attorney-client privilege protects from disclosure documents that contain "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services" and "advice from an attorney to his or her client . . . ." *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 387 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). "[I]t may be invoked to hold secret only those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992).

7

"In the government context, the 'client' may be the agency and the attorney may be an agency lawyer." *Adamowicz v. I.R.S.*, 552 F. Supp. 2d. 355, 364 (S.D.N.Y. 2008) (quoting *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997)) (internal quotation marks omitted). The agency bears the burden of proving that the information contained in the communication is confidential, *Families for Freedom*, 797 F. Supp. 2d. at 387, and not that it is "merely . . . . a communication between the agency and its lawyer," *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d. 252, 267 (D.D.C. 2004) (internal citation omitted).

The work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). Specifically, it protects the "files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation." *A. Michael's Piano*, 18 F.3d at 146 (internal quotation marks and citation omitted). The standard in this Circuit is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (internal quotation marks and citation omitted). However, "[t]he mere relation of documents to litigation does not automatically endow those documents with privileged status." *State of Me. v. U.S. Dep't of the Interior*, 298 F.3d 60, 69 (1st Cir. 2002). Further, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

### 3. Application of Exemptions to Withheld Documents

After having closely reviewed the explanations within the Viscuso Declaration, the Court finds that the declaration is sufficiently detailed for the Court to determine that the agency properly withheld the documents. *See Adionser v. Dep't of Justice,* 811 F. Supp. 2d 284, 293 (D.D.C. 2011) (holding that the declaration "is sufficiently specific, detailed, and separable to satisfy defendant's burden . . . because the declaration provides 'a reasonable basis to evaluate [each] claim of privilege'" (quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 192 (D.C. Cir. 2006)) (alteration in original)). The Viscuso Declaration sufficiently explains why each withheld document was deliberative in nature and exempt under the deliberative process privilege, a privileged communication between the agency and its attorneys and exempt under the attorney-client privilege, or contained work product of an attorney which was prepared in anticipation of litigation and exempt under the attorney work-product doctrine.[3] Since each of the twenty-two documents are exempt from disclosure by one or more of these doctrines, the Court finds that the agency properly withheld the documents under Exemption 5. The agency also properly withheld the names and titles of its

8

---

[3] Although the Court does not summarize the explanation for each document contained in the Viscuso Declaration in this Memorandum and Order, the Court has carefully reviewed the explanation for each document and finds it sufficient to warrant summary judgment in defendant's favor as to the application of Exemption 3 and/or Exemption 5 to each document.

employees under Exemption 3 because the agency is required by law to withhold that information.

### 4. Segregability

However, an agency may not withhold an entire document simply because there is information contained within that document that is subject to an exemption. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). While an agency must provide a "detailed justification" and not "conclusory statements" to support its position that the non-exempt material cannot be reasonably segregated, it also "should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). The law provides for "reasonable" segregation, and "does not require the district court to undertake the burdensome task of analyzing approximately 300 pages of documents, line-by-line." *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 53 (2d Cir. 1985).

The CIA asserts that redacted versions of these documents could not have been produced because, due to the nature of the exemptions and the communications, "there exists no nonexempt information which reasonably can be segregated for release." (Viscuso Decl. ¶ 46.) The agency states that the documents were reviewed "line-by-line" and the nonexempt information is "so inextricably intertwined with exempt material that no portions can be reasonably segregated and released." (*Id.*) The agency also states that while the names, titles, and other information on the individuals involved in the communications could be segregated, they are exempt under Exemption 3, and therefore, the documents must be withheld in their entirety. (*Id.*)

The Court finds the agency's explanation sufficient as to why the non-exempt information could not have been segregated from the exempt information. *See, e.g.*, *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005) ("Taken in its entirety, [the CIA's] declaration provides sufficient detail of the nature of the classified and other exempt information contained in the document for the Court to conclude that those isolated words or phrases that might not be redacted for release would be meaningless."). Plaintiff has produced no evidence that the agency's declarations were made in bad faith, or that their detailed responses should not be accepted by the Court. *See Carter, Fullerton & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 745-46 (E.D. Va. 2009) (holding that documents were properly segregated when agency reviewed documents line-by-line assessing segregability, agency had explanations of its segregation procedures and rationales, and plaintiff failed to produce sufficient evidence of bad faith which would undermine the agency's affidavit).

\* \* \*

Based on the information set forth in both agency declarations, the Court concludes that the CIA properly responded to plaintiff's FOIA requests. The CIA conducted a reasonable and adequate search, and appropriately withheld the twenty-two documents pursuant to Exemptions 3 and 5. The CIA also sufficiently explained why the non-exempt information in the withheld documents could not be produced.

IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of the defendant, and dismisses plaintiff's complaint. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED

_____

JOSEPH F. BIANCO
United States District Judge

Dated:    December 11, 2012
          Central Islip, NY

Plaintiff is representing himself *pro se*, P.O. Box 170109, Ozone Park, New York, 11417. The attorney for defendant is Robert B. Kambic, United States Attorneys' Office, 610 Federal Plaza, Central Islip, New York, 11722.